FILED
5th JUDICIAL DISTRICT COURT
Chaves County
3/17/2020 4:44 PM
KATIE ESPINOZA
CLERK OF THE COURT
Valerie Miranda

FIFTH JUDICIAL DISTRICT
STATE OF NEW MEXICO
COUNTY OF CHAVES

MARIO ROSALES
    Plaintiff,

v.

DAVID BRADSHAW, in his individual
and official capacity, and SHERIFF
BRITT SNYDER, in his individual and
official capacity,
    Defendants.

Cause No. D-504-CV-2020-00310 _____

Case assigned to Lilley, Thomas E.

# COMPLAINT

Comes Now Plaintiff, Mario Rosales ("Rosales") by and through his attorneys Heidel, Samberson, Cox & McMahon (Patrick McMahon) and Newell Law Firm (Michael Newell and Christan Quiroz) and hereby brings the following causes of action for damages against Defendants pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 et seq.

Rosales' claims for damages are based on injuries inflicted upon him by Defendant, Sheriff Britt Snyder ("Snyder") and David Bradshaw ("Bradshaw"). Plaintiff Rosales alleges that Defendant Bradshaw used excessive and unnecessary force including drawing his firearm to confront Plaintiff in front of the Rosales residence. Rosales further alleges that Defendant Bradshaw engaged in unlawful conduct arising out of a road rage incident. Snyder failed to properly train Bradshaw on the proper use and exercise use of force including use of force involving a fire are. Plaintiff further alleges that Snyder is liable for his failure to supervise and discipline Defendant Bradshaw for these actions and that Defendant Snyder is jointly and severely liable under these claims.

1



## Parties

1. Plaintiff Mario Rosales ("Rosales") is currently and was at all times material hereto a resident of Chaves County, New Mexico.

2. At all times material hereto, Defendant David Bradshaw ("Bradshaw") was a resident of Chaves County, New Mexico. At the time of the incident complained of herein, Defendant Bradshaw was a full-time salaried law enforcement officer employed by Defendant Chaves County as a Chaves County Sheriff's Office ("CCSO") Sheriff's Deputy, was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978 §§ 41-4-3(D) and (F)(2)), and was acting under color of law and in the course and scope of his employment. Defendant Bradshaw is sued in his individual and official capacities.

3. Defendant Snyder is a resident of Chaves County, New Mexico or was at all times material to this matter. He was also the Sheriff of Chaves County at the time of the incident giving rise to this cause of action. Snyder was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978 §§ 41-4-3 (D) and (F)(2) and was acting under the color of law and in the course and scope of his employment. Defendant Snyder is sued in his individual and official capacities.

## Jurisdiction and Venue

4. All of the material acts and omissions complained of herein occurred in Chaves County, New Mexico.

5. This Court has jurisdiction over both the state and federal claims set forth herein and venue is proper in this court.

6. In connection with Plaintiff's state law claims, all of the acts complained of herein come within the scope of a waiver of immunity contained within the New Mexico Tort Claims

2

Act, NMSA 1978, § 41-4-12 and Plaintiff has given timely written notice of the claims contained herein in compliance with the requirements of the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-18 and 18(A).

### Facts Common to All Causes of Action

7. On or about March 18, 2018, Plaintiff was driving down North Washington, heading south in Roswell, New Mexico on his way to his residence.

8. Rosales was behind a newer model black Ford pickup truck, which was being driven by Defendant Bradshaw, this was Bradshaw's personal vehicle.

9. After passing 19th Street, Rosales decided to pass Bradshaw to which Bradshaw apparently took great offense.

10. Bradshaw began to follow Rosales.

11. Rosales became concerned and made a series of turns without using his turn signal on to determine if Bradshaw was following him. After several turns, it was obvious to Rosales, Bradshaw was indeed following him.

12. Bradshaw in the meantime was calling a fellow deputy with the Chaves County Sheriff's Office, Deputy Rebecca Chavez and asked her where she was working. Bradshaw gave her the description of the Rosales vehicle and the license plate which Deputy Chavez ran. The license identified to be at a residence on South Washington and she advised Bradshaw it appeared Rosales was heading home.

13. Bradshaw then told Deputy Chavez he did not want her to go to his location.

14. Deputy Chavez ignored Bradshaw's request because she knew Defendant Bradshaw had a volatile temper which was also well known at the Chaves County Sheriff's Office including Defendant Snyder.

3

15. Based on her knowledge of Bradshaw and her training and experience Deputy Chavez had a "gut feeling" she needed to proceed to the Rosales residence on Washington Street so she proceeded to the Rosales residence.

16. When she arrived she found Bradshaw at the Rosales residence standing near the back side of his vehicle by the tailgate.

17. By the time Deputy Chavez had arrived on scene Plaintiff had already exited his vehicle with his firearm showing and stayed beside his vehicle.

18. Rosales eventually pulled into the driveway of his residence and waited in his vehicle.

19. Seconds later, Bradshaw pulls up to the Rosales residence and blocks the driveway.

20. Rosales became afraid to exit his vehicle and before he did exit, he grabbed a firearm from his car and put it in his pocket in an openly displayed manner.

21. Bradshaw immediately started yelling and cursing at the Plaintiff in a loud threatening and abusive manner.

22. Plaintiff attempted to speak reasonably with the Defendant. However, the Defendant continued to yell at him in an angry and threatening manner.

23. Bradshaw began making remarks about Plaintiff's handgun and Rosales explained to Defendant that New Mexico is an open carry state and he simply was exercising his rights.

24. Rosales, while remaining in his driveway and while keeping his hands clear of his firearm, walked a little closer to the Bradshaw's truck in an attempt to talk in a normal tone of voice.

25. Defendant then identified himself as Officer Bradshaw and threatened Plaintiff with a reckless driving citation and that he had contacted another officer.

26. During the exchange Bradshaw had pulled a revolver and was holding it in his hand and was pointing it at Rosales in a threatening manner.

4

27. Shortly after, while Plaintiff was still trying to reason with Defendant, the wind blew Plaintiff's shirt over his firearm.

28. As soon as that happened, Defendant Bradshaw yelled, "now that's concealed carry" and purposefully raised his gun at Plaintiff in a manner that made Rosales fear he was about to be shot.

29. Plaintiff immediately put his hands in the air and backed away from Bradshaw.

30. While Plaintiff was backing away from Bradshaw, he noticed the top of a child's head in the passenger seat of Bradshaw's vehicle.

31. Rosales then tried again to reason with Bradshaw. Bradshaw told Rosales he would talk to him after he placed his gun back in his vehicle.

32. Rosales complied with Bradshaw's request and placed his firearm back in his car.

33. After Plaintiff placed his firearm in his car, Defendant Bradshaw exited his vehicle wearing a long sleeve t-shirt, shorts, and no shoes.

34. Bradshaw continued to speak over Plaintiff and asked for his license. Bradshaw asked if Rosales had been drinking. Plaintiff explained to the Defendant that he does not drink. Bradshaw continued to confront Rosales in an angry and threatening manner. Verbally abusing him in his own driveway.

35. Soon after Bradshaw exited his vehicle, Deputy Chavez arrived at Plaintiff's residence. Deputy Chaves instructed Rosales to come over to her and she advised Bradshaw that he could leave.

36. Even after Deputy Chavez arrived and before Bradshaw left Rosales continued to try to reason with Bradshaw and told him, "let's talk human being to human being."

37. Defendant snapped back with, "I'll talk to you in court when you get your citation in the mail."

38. Eventually Defendant got into his vehicle and drove away. Bradshaw's behavior was described by Deputy Chavez as highly irritated.

39. Plaintiff told Deputy Chavez that Defendant Bradshaw pointed his revolver at him.

40. Deputy Chaves gave Plaintiff back his license and explained to him that he would not be getting a citation from her.

41. Plaintiff never received a citation from Defendant Bradshaw.

42. Prior to engaging in the use of unnecessary and excessive force upon the Plaintiff, Defendant Bradshaw had a duty to critically evaluate the facts on which he would rely to support his anticipated and to determine if such actions were objectively reasonable and in good faith under the totality of the circumstances.

43. Defendant Bradshaw failed to exercise his duty in these regards.

44. There was no probable cause for Defendant Bradshaw to reasonably believe that the Plaintiff had committed any offense which required or authorized him to follow Plaintiff to his home, block him in his driveway and point his firearm at the Plaintiff.

45. At the time the Defendant Bradshaw pointed his firearm at Plaintiff, the Plaintiff posed no immediate threat to Defendant, nor was he engaged in any other conduct which required, authorized or justified the uses of excessive and unnecessary force on him described in the immediately preceding paragraphs.

46. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Bradshaw understood them to be, could reasonably have

believed that the Plaintiff had committed any offense or engaged in any conduct which required or authorized the use of.

47. As a result of Defendant Bradshaw's unlawful actions Defendant Bradshaw was fired by Defendant Chaves County Sheriff's office.

48. Defendant Bradshaw was eventually charged and convicted of aggravated assault.

## Actions of Chaves County Sheriff Snyder

49. Prior to beginning work with the Chaves County Sheriff's office Defendant Bradshaw had a history of abusive behavior as a police officer and had been forced out of his prior employment within law enforcement.

50. Information about Defendant Bradshaw's past abusive behavior was available and known by the Chaves County Sheriff Snyder when Defendant Bradshaw was hired.

51. Notwithstanding the knowledge that Defendant Bradshaw had a history of abusive behavior associated with his actions as a police officer and even though he had been forced out of other law enforcement agencies, Snyder hired him to work as a deputy for the Chaves County Sheriff's Office.

52. Even though his history of abusive behavior was known at the time of his hire, Snyder provided no special training or supervision over Defendant Bradshaw to properly perform his duties as deputy in an appropriate manner.

53. After Defendant Bradshaw joined the Chaves County Sheriff's Office his volatile behavior reemerged, and he was known around the Department as being high strung because of his explosive temper.

54. Despite the prior work history of Defendant Bradshaw and even though it was known by Sheriff Snyder that Bradshaw was volatile, no other training or supervision was provided to Bradshaw.

55. This knowledge should have prompted the Chaves County Sheriff's Office to terminate Defendant Bradshaw or at the very least to take proper action to supervise, and when necessary, discipline Bradshaw for his actions.

56. Defendant Snyder's failure to act constitute omissions by a policy maker that manifest a deliberate indifference to the constitutional rights of individuals, rendering it liable for Defendant Bradshaw's unconstitutional actions against Plaintiff.

57. Defendant Snyder had a duty to exercise due care in the supervision and training of subordinate law enforcement officers employed by the Chaves County Sheriff's Office. Defendant Snyder also had a duty to implement and enforce appropriate policies and procedures so that subordinate offices like Defendant Bradshaw would respect the constitutional rights of others.

58. The acts of Defendant Snyder constituted personal involvement by him violating Plaintiff's constitutional rights and causing the injuries and damages described herein. In so doing, Defendant Snyder acted knowingly or with deliberate indifference to the possibility that constitutional violations would occur.

59. The acts and omissions of Defendant Snyder, as descried herein were intentional, reckless, wonton, willful and deliberately indifferent to the rights of the public, including the Plaintiff.

60. The acts and omissions of Defendant Snyder were a direct and proximate cause of the deprivation of clearly established Fourth Amendment rights of the Plaintiff, as well as the resulting injuries and damages set forth herein.

61. Based on the supervisory liability, Defendant Snyder is liable, along with Defendant Bradshaw, jointly and severally, for the compensatory damages to which Plaintiff is entitled.

62. Defendant Snyder's failure to act in the face of actual knowledge of Defendant Bradshaw's unlawful and incompetent actions which required training, supervision and discipline was undertaken willfully, intentionally, knowingly, recklessly, wantonly, oppressively and in reckless, callous and deliberate disregard of and indifference for Plaintiff's constitutional rights, as a result Plaintiff

## Count I
## Fourth Amendment Claim Against Both Defendants
## (Excessive and Unnecessary Use of Force)

63. Plaintiff incorporates paragraphs one through sixty-two the same as if each were set forth herein.

64. Plaintiff Rosales has and had a Fourth Amendment right to be free from the excessive and unnecessary use of force.

65. The force used by Defendant Bradshaw on Plaintiff was excessive, unnecessary and unlawful under the circumstances. Defendant Snyder knew that Defendant Bradshaw would act in an excessive, unnecessary and unlawful manner.

66. The excessive, unnecessary and unlawful force used by Defendant Bradshaw upon Plaintiff was not justified or privileged under clearly established law and constituted an unreasonable seizure under the Fourth Amendment.

67. More specifically because Defendant Bradshaw could not have believed that Rosales presented threat to his safety or the safety of others or that Rosales was resisting arrest or attempting to flee, Defendant Bradshaw's use of force violated Rosales' clearly established Fourth Amendment rights. Defendant Snyder's failure to supervise, train and discipline coupled with Bradshaw's anger management issues, which were known, was a cause of the injuries to Plaintiff.

**Count II**
**State Law Tort Claims Against All Defendants**
**(Assault and Battery)**

68. Plaintiff incorporates paragraphs one through sixty-seven the same as if each were set forth herein.

69. Defendant Bradshaw's excessive and unnecessary use of force against the Plaintiff constituted assault and battery under New Mexico common law.

70. If the actions of Defendant Bradshaw and Snyder described herein were not intentional, reckless or undertaken with deliberate indifference, they were negligent.

71. Defendant Snyder breached his duty to train, supervise and discipline Bradshaw and committed the torts of negligent hiring, supervision and discipline, which proximately caused the harms that Rosales suffered at the hands of Bradshaw and for which Snyder is jointly and severely liable.

**Request For Relief**

Wherefore Plaintiff prays the Court enter judgment in Plaintiff's favor awarding Rosales compensatory damages against the Defendants, punitive damages against the Defendant on the federal law claim, trial by jury, attorneys fees, costs, prejudgment interest and such other and further relief as may be equitable and just.

        Respectfully Submitted,

        **NEWELL LAW FIRM**
        10 W. Adams Ave, Ste. E
        Lovington, New Mexico 88260
        (575) 739-6395

        By: _/s/Michael Newell_____
            **Michael Newell**
            **Christan Quiroz**

Attorneys for Plaintiff